with 24-2156 United States v. Peshlakai. Good morning and may it please the court and counsel. My name is Deborah Roden. I represent the appellant Mr. Peshlakai. I am with a law firm of Woodhouse, Roden, Ames, and Brennan in Cheyenne, Wyoming. This morning I would like to focus my comments on one of the issues raised in this brief, which is the issue as to the jurisdiction of the FBI to arrest Mr. Peshlakai. In this matter, the underlying facts were largely undisputed and the facts found by the district court are also not in dispute or raised on appeal. The issue is really the legal conclusion that comes from those facts. Is the district court's conclusion that Mr. Peshlakai was arrested for a federal offense a factual finding? I think the district court's conclusion that Mr. Peshlakai was arrested is a factual finding. For a federal offense. I think that's maybe where I would depart. I think the finding about it being for either a federal offense or for a Navajo Nation offense. What about the court's finding, or the court's conclusion that he wasn't held by the Navajo Department of Corrections? Is that a factual finding? I think that's accurate if you're talking about the Department of Corrections. Where that becomes important or disputed is the Navajo Nation code references custody, largely in the statutes. It doesn't, in those portions, specify that it means custody of the Department of Corrections. It's just talking about custody by the Navajo Nation. And so, in this case, I would agree that Mr. Peshlakai was never actually in custody of the Department of Corrections. He wasn't actually booked in and taken to the jail, or what have you. But I would argue that he was, in fact, in custody of the Navajo Nation and its law enforcement. And that's why I believe that that triggers those protections and those provisions. Well, to Judge Rossman's point about whether it's a factual finding that he was arrested for a federal offense, what basis would there be to say that that's clearly erroneous? So, it's our position that the Navajo Nation can only, excuse me, Navajo Nation law enforcement can only arrest for a Navajo Nation violation based on the Navajo code. They can arrest for a federal violation if there is an agreement, if there's an agreement between the United States and the Navajo Nation. The record is absolutely silent as to whether such an agreement exists. Neither party discussed that, neither did the court. But it is our position that absent such an agreement and or establishment of such an agreement, then the Navajo Nation can only arrest for a violation of the Navajo code, in which case that person is then in the Navajo custody, the custody of the Navajo Nation. They do have the authority, don't they, the Navajo Nation to take someone into, to detain someone temporarily, to take them into custody, to have them basically await a federal investigator. So, what happened in the Cooley case, I'm not sure if you're familiar with that. Can you say the case? Is that what happened in the Cooley case? I am not aware of the Cooley case, I apologize. You didn't cite it, but I would seem to suggest that they do have that authority to detain for a federal offense, essentially, or to detain for a federal investigation. And in that case, it was a non-Indian, I will tell you that, but they took that non-Indian to the station for, to await a federal investigation. So, my reading of the Navajo code and the extradition pieces are that they can do that if there is an agreement in place to do that. And as I stated earlier, the record is simply silent as to whether or not that exists in this case. Does that statute that you're referring to, and I'm not pulling it up right now, but indicate that they have to have an agreement in order to detain someone? So, your Honor, that would be found not necessarily in the Navajo Nation code. It is more specifically found in, let me grab the name of it here, the Tribal Law and Order Act of 2010. Okay. So, that is where, and let me pull that up for you. Are you talking about the cooperative agreements? Are you talking about 25 U.S.A., 2815, where they can enter into cooperative agreements? Correct, yes. So, that's the premise under which I argue that there has to be a cooperative agreement. Otherwise, Where does that statute indicate that there has to be a cooperative agreement for the Navajo to detain someone? For a federal investigation. So, what I can answer for you, Judge Moritz, is I'm combining the authority from the Navajo Nation code and its extradition statutes along with this United States Code statute, and sort of saying that, which this statute says the Attorney General may provide assistance to tribal governments that enter into cooperative agreements. So, in order for the federal government to provide this assistance, they need to enter into these agreements. And again, the record is simply silent as to whether or not that exists in this case. And the overarching question really is how can these two sovereigns lawfully interact? How do they cooperate, and what are the procedures that are required in order for them to cooperate? Can I ask you a question that assumes the detainer statute applies and was violated? Why is suppression a proper remedy here? And if you can answer that, and also sort of help me better understand if your argument is rooted in the Fourth Amendment or in due process. Certainly. So, I asked myself that same question as I was preparing for this, and I would point the court to two places. One would be the case of Ross versus Neff, which is a Tenth Circuit case. Not identical facts, certainly. Haven't we limited Ross to its facts? Haven't we limited Ross to its facts? I don't think so. So, if I read Ross versus Neff, the language of it says, we have implied that an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment, and so on. And then the next sentence says, we now so hold expressly. So, I think the holding is that an arrest made outside of the officer's jurisdiction is a violation of the Fourth Amendment. But the arresting officers in Ross versus Neff were state officials. I mean, we don't have that situation here. I mean, it would seem to me Ross actually cuts against you, because it says unequivocally that the federal government can arrest for federal offenses. I mean, and so the FBI has statutory jurisdiction to arrest for federal offenses. And so, I mean, how does Ross help you? I mean, it may establish at an overarching level a potential Fourth Amendment violation in some other case where there's a state official, but that's not this case. So, I agree with you that Ross didn't involve federal officials, and I absolutely agree with you that federal officials can arrest for a federal offense, undoubtedly. The complicating factor and complicating facts in this case are that the district court specifically found that Mr. Peschlakai had been arrested by the Navajo Nation. And it's our position that once you're arrested by the Navajo Nation, and that, in our estimation, means that you're in custody of the Navajo Nation, that then the protections triggered by the extradition statute start or begin. I'm sorry, go ahead. No, that's okay. Let's assume a tsunami of violations here. Navajos shouldn't have arrested him because they didn't have a Navajo offense. The detainer statute applies in this situation. And then the FBI comes in, and they swoop in, and they arrest him for a federal offense. What about that tsunami strips the FBI of jurisdiction to do what they did? And more to the point, why should that result in suppression? My point being that ultimately, it seems to me, it really doesn't matter whether all of these violations occur if the FBI has independent statutory authority. And I'm talking, a case I'm thinking about is like Fox, where the court speaks to the idea of the FBI being able to enforce 922G in these situations. So what difference does it make? Unless you have authority that says the FBI is stripped of their jurisdiction by virtue of any violation, antecedent, that took place, then it seems to me you have a problem. And your point is well taken, Judge Holmes. The piece that I think is missing in that analysis is the FBI does have jurisdiction. However, because Mr. Pachalakai was already in the custody of the Navajo Nation, the law requires that then they follow these due process procedures. What law? The Navajo law? Correct. And in my tsunami, I'm contemplating the FBI said, pound sand Navajo law, we don't care, we're arresting him. And the Navajo Nation presented him to be arrested. And in that scenario, I don't see any stripping of jurisdiction, nor do I see a grounds for any sort of suppression of evidence. Whether Mr. Pachalakai has some other remedy and some other way to vindicate his concerns or not, that's another matter for another day. But the question is whether they had an independent statutory authority to go in and do their job, and if there was anything that went on in this scenario, particularly Navajo law, stripping that independent federal authority to arrest him. So is there any authority that would support the notion that Navajo law could strip the FBI of jurisdiction to arrest him? I don't believe it strips him of jurisdiction to arrest. I thought that's your whole point. They don't have jurisdiction. They do have jurisdiction once they follow the procedures, is our position. Why do they have to follow the procedures, is what I'm asking. Because the Navajo Nation and the federal government are two sovereigns, and that's the critical piece. We've got to remember that they are both sovereigns. And the Indian tribes are dependent sovereigns. They're dependent sovereigns vis-a-vis the federal government. And so the federal government determines the breadth of their sovereignty, and if the federal government decides they're gonna come in and they're gonna arrest somebody, all I'm not, and note, I'm not talking about whether there was a violation. I'm not talking about whether they should have done X, Y, and Z. Sure. That's not what I'm talking about. I'm talking about is what is, what would be the consequences of them not doing X, Y, and Z vis-a-vis the jurisdiction of the FBI? And as far as I could see, there's nothing that would prevent the FBI from doing, you know, from coming in, and particularly if they had a cooperative, it's not like the Navajos were trying to fight them to take custody of Mr. Peshlakai. Well, they came in and they took him. So what is there that would stop that jurisdictional hook, is what I'm asking you. What comes to my mind, Judge Holmes, is let's say an individual is in state custody, right, in a state department of corrections. There are procedures where obviously the federal government can then extradite them or put a detainer on them and pull them back into federal custody, and it's our position that the same procedures have to occur when someone is arrested for a Navajo Nation violation as well. Otherwise, I don't know why you would have any Navajo Nation code or even Navajo law enforcement. If the FBI or the federal government could do anything they wanted to on any tribal lands, then that would make a lot of these laws superfluous. There would be no need for them. I'm not saying what is optimal. In your analogy of states, states are independent sovereigns vis-a-vis the federal government. At least as I understand the law, that's not the way it works vis-a-vis Indian tribes and the federal government. States can't be stripped of their sovereignty by the federal government in the same way that Indian tribes can't be. And so my question to you is simply, is the entire essence of your argument that because the FBI did not have jurisdiction to arrest Mr. Peshla Kai, or when it arrested him it didn't have jurisdiction, then the Fourth Amendment consequences found in Ross v. Neff are true? Can you say that one more time? Sure. Is the essence of your argument that because the FBI acted without jurisdiction, the implications of Ross v. Neff come into play in the sense that their entire investigation then is tainted from a Fourth Amendment violation point of view? That's correct, and that's certainly what was raised below by defense counsel. That's the exact argument, that an arrest outside of jurisdiction then triggers the Fourth Amendment protections and requested suppression of everything that occurred thereafter, which was an interview of Mr. Peshla Kai taking up his phone and downloading those contents. Are you raising an independent due process argument, or is your argument grounded in the Fourth Amendment and trying to get in under Ross? It's really, I don't really have an independent one outside of the jurisdiction of the arrest and the procedures. It's not that they can't arrest, it's that they need to follow these procedures. I see I'm almost out of time. Well, I have a question. Yes, of course. I guess what I hear you saying is that you're focused, again, on the federal detainer statute that's in the Navajo Code, but that statute, according to the policy statement behind it, which is section 1962, it's pretty clear that that only applies when there's concurrent jurisdiction. Essentially, when you have a tribal member arrested by the Navajo for a crime for which there is concurrent federal and Navajo jurisdiction. They are in the custody of the Department of Corrections, and when the United States wants to come in and prosecute for that same crime, for which they also have jurisdiction, they, according to this, have got to follow, the Navajo also have to follow this extradition procedure, because that person is already in custody. And so that's how the United States, with concurrent jurisdiction over someone already in custody, pulls that person out and is able to exercise their own jurisdiction. But that's not what happened here. We definitely don't have a situation, whatever it was, we don't have a situation where this individual was arrested for a crime for which there was concurrent Navajo and United States jurisdiction, and was in the custody of the Department of Corrections, and in order for the United States to charge him, they needed to pull him out. So we don't have that situation here, which is what the policy statement indicates the detainer statute is all about. I would disagree on one point, which is that I don't think they have to be prosecuted for the exact same crime. I think it's, the detainer statute applies when there are a violation of a Navajo. It applies when there are certain crimes that can be prosecuted concurrently under Navajo Nation law, and under 18 U.S.C. 1151 and 52, and other federal laws concerning generally applicable federal offenses. I understand that, and I agree. What do we have here that is a crime that can be prosecuted concurrently under Navajo Nation law? And that's just assuming that he's in custody as is anticipated by the statute. What comes to mind that he could be prosecuted for under Navajo law, obviously there is the domestic dispute, the kidnapping pieces, correct? The federal piece, you've got the firearms offense, the 922-G, so they are slightly different, but I would submit that because he did violate Navajo Nation law and was arrested by Navajo Nation law enforcement and in their custody, that then all of these detainer procedures are triggered in order for the federal government to come take him and take custody of him. Thank you so much. Thank you. May it please the court. Good morning. My name is Kimberly Bell. I'm an Assistant United States Attorney on behalf of the United States. The FBI did have jurisdiction to arrest Mr. Peschlakai on that day, and there was no pending Navajo Nation charge at the time of the federal arrest. Navajo Nation had taken Mr. Peschlakai into custody following a series of events where the Navajo Nation had requested the FBI's assistance. The day prior to the arrest, the Navajo Nation police had requested the assistance of the FBI. How should we be thinking about that fact? What legal significance does that have? I think that it, to the extent that the court has any concern about whether there was a dispute between these two sovereigns about who should, you know, who had the authority to make the arrest or who should do what, I think that that puts that to rest. This wasn't the FBI swooping in to something that was contained within the Navajo Nation's criminal procedure and code, but rather something where the FBI had been called in, and in fact, the FBI agent at issue who had made the federal arrest had been at the Navajo Nation police station the night before and spoken with Mr. Peschlakai by phone and made this agreement that Mr. Peschlakai would come in to be arrested. In other words, he said he would turn himself in. And that was what the phone conversation the night prior to the arrest had resulted in. Well, did the Navajo Nation arrest, going back to the initial question that began us down this road, did the Navajo Nation arrest Mr. Peschlakai for a Navajo Nation offense? They did not, Your Honor. There was- So what did they do? I mean, how was he held then? And this goes to the detainer, a detaining question that Judge Moritz asked. I mean, was he detained? Was he arrested? What was he before the FBI showed up to get him? Your Honor, based on what we have in the record, I think the closest thing we have is an arrest for investigative purposes, or detained, rather. I think, I understand that the district court opinion referred to it as an arrest, but in considering the totality of the facts that occurred, the Navajo Nation police knew that Mr. Peschlakai was coming, and that he was coming to the station that day. And I think the real reason we know that this was not an arrest on any sort of Navajo charge was that the record shows us that Mr. Peschlakai was put in handcuffs and taken into the booking area for a COVID test, but then purposefully was taken out of that area and taken to another part of the building. You're not asking us to disagree with the district court that he was arrested, right? No, I am not. I'm just. So what was he arrested for? Well, I mean, I think that, I think that the word arrest in this, you know, I mean, he is prevented from doing anything. He is in the custody of the Navajo Nation police. I think the dividing line is that the sequence of events, factually, that we have is that he was not charged with anything, he was not booked on any Navajo charge. And all indications from the record are that he was arrested to assist the federal investigation in anticipation of a federal arrest. The district court said he was arrested for a federal offense. That's right. Is that the government's position that we should begin and end our factual concerns about the arrest with the district court's finding because it was not challenged as clearly erroneous? Yes, your honor, because, and for the reason you just outlined, and also because there is nothing in the record to show any sort of arrest for any sort of Navajo charge. What, oh, okay. What if we just assume that they did arrest him for a federal offense and it was not, obviously, within their jurisdiction to do so? So let's assume it was an unlawful arrest by the Navajo. Does that make any difference in terms of the, requiring the federal detainer statute to somehow apply? If he was, I mean, if he was unlawfully arrested, isn't it still possible for the feds to come in and exercise their own jurisdiction in this case? Yes, your honor, precisely. Even if there was, if it was improper, if anything that the Navajo Nation Police did between the time that Mr. Peschlakai turned himself into the station and the time that the federal agent arrived, that has no bearing on the detainer statute, which is the focus of the appeal in what's before this court today. What would make it have bearing on the detainer statute? What would have had to happen for the, to require the detainer before he would be turned over to the feds, instead of being voluntarily turned over as he was? What would have had to happen, your honor, is that the Navajo Nation would have had to arrest him on a Navajo charge, a violation of Navajo code or Navajo criminal law? Would it have to have been a concurrent prosecution as the policy statement indicates? Your honor, I appreciate the language that was pointed out during the argument previously, and I think if you take that on its face that it does suggest concurrent, a concurrent offense, but even if, for all practical purposes, this was a very dynamic situation, and even if these two entities are not entirely set on what their charges are going to be, and it ends up being that the Navajo Nation had an arrest for the domestic violence incident the day before, I can see where that actually might cause a question about the detainer statute, because of the procedural concerns that the detainer statute, the detainer part of the Navajo code is trying to address, which is primarily to make sure, based on a reading of the Navajo Nation code in its detainer statute, to make sure that we have the right person, that the federal agent who's shown up to take the individual into federal custody has the right individual, that all of the identifiers, excuse me, are there, and that the charge is clear, and that, to be quite frank, that everybody understands what's happening here, and that we've taken the right person for the right reason. Well, it's about effectuating a transfer of custody, right, I mean, that's what it's about. Right, fundamentally what it is, and I think also, the detainer statute in the Navajo Nation code can be read in contrast to its extradition statute, which is in a different section, and which addresses situations where somebody's being arrested by a state entity, or a. What interpretive principles should we be invoking when we're looking at Navajo statutes here, when we're looking at the detainer statute, federal or Navajo interpretive principles? I think, for purposes of the case before you, I think the federal principle should apply, because it is the federal arrest that's being challenged here, and what occurred leading up to that federal arrest. And your authority for that as well? I'm unable to give you an authority off the top of my head, but based on the circumstances before the court. Would you react to the statement I made that essentially, no matter what happens here, in terms of any procedural mess up, anything that should have happened that didn't happen in terms of the FBI violated the detainer statute by picking him up, the Navajos shouldn't have arrested him, all of that stuff, no matter whether that happened or not, as long as the FBI was not stripped of jurisdiction to make the arrest by virtue of that prior misconduct, well, misconduct is probably a strong word, but prior violations, the case is, then they lose, right? Your Honor, I think that's correct. I think even if, as Your Honor pointed out, that the detainer statute was violated, that what the Navajo Nation Police did was improper, what the FBI did in not seeking the detainer was improper, nevertheless, what's completely absent from what we have here is any nexus between that violation and evidence that is subject to suppression, and any due process violation that resulted from the failure to follow the Navajo Nation's detainer procedure, and without those two things, without any clear violation, or any evidence that is clearly subject to suppression, due to the circumstances that transpired, then I think that regardless of whether the detainer statute was followed or not, appropriate. Your argument seems to assume that suppression is an appropriate remedy here. Is that the government's position? No, and I apologize if I left that impression. My argument is the opposite, that suppression is not the appropriate remedy here, because there needs to be some sort of nexus or some reason that the failure to follow the detainer statute specifically results in a Fourth Amendment violation where suppression. Is there a basis for a due process claim and remedy? I, there is not, and none has been argued. I mean, there's nothing in the record, and there's nothing in the arguments before the court that outlines a clear due process violation that where suppression would be warranted. The, if I understood you correctly, when you referenced nexus, you have potential violation of the detainer statute, and you have a Fourth Amendment violation, and your argument was there's nothing that bring those two together, right? That's exactly right, Your Honor. Well, what I understand the defendant to be saying is what would bring those two together is if a violation of the detainer statute had the effect of stripping the FBI of jurisdiction so that the analogy of Ross versus Neff would mean that the FBI committed a Fourth Amendment violation. And so, perhaps inartfully, but what I was trying to get at with you earlier is even if there was a violation of the detainer statute, the novel detainer statute, there's still no jurisdiction stripping on this end, right? That's right, Your Honor, and I hope I'm understanding Your Honor's question correctly, but with respect to the nexus issue, what happens in this case is when the federal agent shows up, Mr. Peschlakai makes a knowing and voluntary Miranda waiver that has not been challenged, and he speaks with the officer just as he had done the night before for a period of time, and following that conversation, the arrest occurs. So, and that's what, that is the point at which even if Mr. Peschlakai had been facing some sort of Navajo charge and was in Navajo custody, that's where the detainer would have had to have, that procedure, that's where the detainer would have had to have been completed. That process should have been completed. So there's no evidence that flows from the failure to take that step that should be suppressed, and I also just, Ross v. Neff, as the court has already noted, is a situation where it's a state official who inadvertently comes onto tribal land to effectuate an arrest, and that creates a jurisdiction question, but there is no jurisdictional issue here. This is a probable cause arrest by the FBI agent that was completely within the jurisdiction of the United States and the FBI and a proper arrest for the agent to have made. So if I understand you correctly, what you're saying is that the federal, the Navajo detainer statute would have been triggered only at the time that the FBI, after interviewing him, having Mirandized him, decided to arrest him, right? That's right, Your Honor, because at that point he would have been taken from the Navajo Nation. Okay. I at least understood the argument of the defendant in part to be broader than that in the sense that the investigation itself was tainted because the FBI basically had no basis to, since he had been arrested by the Navajos, he was being detained by the Navajos, the FBI had no basis to go in and interview him to begin with. In other words, Miranda implies custody, the point would be he's in the Navajo custody, he's not in the FBI's custody, therefore they didn't have any basis to interview him to begin with. Is, you don't read their argument as being that? I don't, Your Honor, to be honest. I think that there's, you know, there was at the district court level some discussion, as I recall, about the propriety of the Navajo arrest to begin with. In other words, when he's placed in handcuffs, when he presents himself at the station. And whether the court views this as a situation where it's a continuous action, that he was in the custody of the Navajo Nation police and that, whether that period of custody is broken by the arrival of the FBI officer or not. What I don't see and what we don't have in the record is a straightforward challenge of the Navajo arrest. I would point out that the record is clear that when the FBI agent arrived, he was, the FBI agent uncuffed Mr. Peschlakai, which would indicate that there was a transfer at that point. That now he's, and I see my time is up. May I continue? Yes, please. That at that point, there is a transfer that now he's with the FBI and he's having this interview and that's where there's a Miranda reading of rights and waiver. Thank you very much counsel. Thank you, your honor. Case is submitted.